PEOPLE v LIVERY CLARK

Docket No. 94558. Submitted April 14, 1988, at Grand Rapids. Decided October 18, 1988.

Livery Joe Clark was convicted of breaking and entering an occupied dwelling with intent to commit a felony and assault with a dangerous weapon following a jury trial in the Berrien Circuit Court, Julian E. Hughes, J. Defendant then pled guilty to being an habitual offender. Defendant appealed raising several issues.

The Court of Appeals *held:*

1. There was no intimidation of the victim by the police or the prosecutor in regard to her testimony.

2. The trial court's reminder to the victim of her privilege against self-incrimination in front of the jury was proper under the circumstances.

3. The trial court did not err in instructing the jury.

4. The trial court did not abuse its discretion in admitting evidence of defendant's 1979 misdemeanor conviction for receiving and concealing stolen property for impeachment purposes.

5. Alleged prosecutorial misconduct did not deny defendant a fair and impartial trial.

Affirmed.

1. PROSECUTING ATTORNEYS — WITNESSES — IMPEACHMENT.

A prosecutor may impeach a witness in court, but may not intimidate the witness, in or out of court.

2. TRIAL — WITNESSES — PRIVILEGE.

A lawyer may not knowingly call a witness knowing that the witness will claim a valid privilege not to testify.

3. APPEAL — JURY INSTRUCTIONS.

The Court of Appeals reviews jury instructions in their entirety

REFERENCES

Am Jur 2d, Appeal and Error §§ 623, 810 *et seq.,* 891 *et seq.,* 896.

Am Jur 2d, Trial §§ 192 *et seq.,* 604 *et seq.*

See the Index to Annotations under Appeal and Error; Credibility of Witnesses; Instructions to Jury; Prosecuting Attorneys.

in order to determine if error requiring reversal occurred; even where instructions are imperfect, there is no error requiring reversal where the instructions fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant.

4. TRIAL — JURY INSTRUCTIONS.
   It is proper for a trial court to instruct the jury to assess the credibility and incredibility of the witnesses.

5. APPEAL — JURY INSTRUCTIONS.
   A verdict will not be set aside based on an alleged error in the jury instructions where no objection was made to the alleged error at trial unless it resulted in a miscarriage of justice.

6. PROSECUTING ATTORNEYS — MISCONDUCT — APPEAL — FAIR TRIAL.
   The test for determining whether prosecutorial misconduct warrants reversal is whether the defendant was denied a fair and impartial trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prosecuting Attorney, and *David P. LaForge,* Assistant Prosecuting Attorney, for the people.

*Matthew Posner,* for defendant.

Before: SHEPHERD, P.J., and SAWYER and K. MACDONALD,* JJ.

PER CURIAM. Defendant appeals as of right from his conviction by a jury of breaking and entering an occupied dwelling with intent to commit a felony, MCL 750.110; MSA 28.305, and of assault with a dangerous weapon, MCL 750.82; MSA 28.277. Following his conviction, defendant pled guilty to being an habitual offender, MCL 769.10; MSA 28.1082. Defendant was sentenced to concurrent terms of four to twenty-two-and-one-half years imprisonment on the breaking and entering conviction and two to six years on the assault conviction.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant's convictions arose out of an altercation which occurred on the evening of October 7, 1985, at the home of Bessie Hornes, defendant's girlfriend, between defendant and Hornes. Defendant raises several issues on appeal which we will address serially.

I

Defendant's first set of issues concern the testimony of Bessie Hornes. Defendant argues that he was deprived of a fair trial because Hornes was intimidated by the prosecutor's threats of perjury.

A prosecutor may impeach a witness in court, but may not intimidate the witness, in or out of court. *People v Pena,* 383 Mich 402, 406; 175 NW2d 767 (1970). Although the issue of prosecution intimidation usually arises in the context of alleged intimidation of defense witnesses, this Court has condemned as well intimidation by the prosecution of its own witnesses. *People v Crabtree,* 87 Mich App 722, 725; 276 NW2d 478 (1979). In such cases this Court examines the pertinent portion of the record and evaluates the alleged wrongful acts in context on a case-by-case basis. *People v Callington,* 123 Mich App 301, 305; 333 NW2d 260 (1983).

At the preliminary examination held on October 17, 1985, Hornes testified that defendant had come to her home at approximately 11:15 P.M. on October 7, 1985, and broke into her home by kicking down the front door. Hornes stated that she called the police to ask for help. While she was on the phone with the police, defendant came into her bedroom, asked her to whom she was talking, took the phone from her, and, while the phone was off the hook, started beating Hornes with a three- to four-foot iron pipe. Hornes testified that she did

not swing the pipe at or beat defendant before defendant beat her.

At trial, defense counsel indicated to the court his belief that Hornes had been intimidated into testifying by the prosecutor. The court held a hearing outside the presence of the jury to determine whether or not the witness had been intimidated. Hornes initially testified that she wanted the prosecution to drop the charges against the defendant and that she had communicated her desire to the prosecution. Hornes had indicated to the prosecution that "there were differences in things that [she] wanted them to understand that weren't really exactly as they came out at the preliminary examination." In response to defense counsel's question whether the prosecution had told her she must tell it as it was told at the preliminary examination, even if that wasn't true, Hornes stated, "Right. To tell it like I stated it before." However, on direct examination, cross-examination, and in response to questions from the court, Hornes testified that she hadn't been told to say anything but the truth, and that she remembered being told by a police officer that she could go to jail for perjury if she got on the witness stand and said something that wasn't the truth. Hornes stated that she was not afraid to testify to the truth, that she would testify truthfully, and that she just wanted to be able to tell the jury that she had wanted the charges dropped.

After the trial court was advised that Hornes had asked defense counsel about invoking her Fifth Amendment right against self-incrimination, the trial court appointed an attorney to consult with Hornes regarding her testimony and Fifth Amendment rights. Later in the afternoon, after Hornes had had an opportunity to consult with an attorney on her Fifth Amendment right, the court

ruled on the question of intimidation of the witness:

> *The Court:* Alright. The Court at this time is prepared to rule on question [sic] of intimidation which we had an evidentiary hearing before.
>
> After reviewing the entire matter, the testimony that was given, it would appear definitely that the witness is a reluctant witness, but her reluctance seems to arise from her relationship with the defendant rather than anything that she claims the prosecutors' office might have said. That is, the prosecutor himself or any member of the prosecuting attorneys' office has said to her.
>
> She also seemed to be upset because the prosecutor would not let her drop the charges or listen to her further explanation of the events that were surrounding—that surrounded the commission of this alleged crime.
>
> However, after being fully examined, she appears to be willing to testify fully about the incident and accurately to the best of her knowledge, even assuming that her testimony is different than that previously given at the time of the preliminary examination and this she even said in spite of the fact that she has later been charged with giving false information to the police.
>
> Therefore, assuming the prosecutors' office has made some statements about perjury or about a possible charge for giving false information to the police, she has not been affected by this, and therefore, is not intimidated in any way.
>
> Alright. Therefore, the Court does find that she is a proper witness and may testify.

Defense counsel moved for a mistrial, which was denied by the trial court. The court indicated, however, that the evidence pertaining to Hornes' willingness to testify would be admissible as it concerned the issue of credibility. The court further reiterated to Hornes her right not to testify to

anything that might tend to incriminate her and permitted Hornes' appointed counsel to sit by her during her testimony to give Hornes the opportunity to consult with him prior to answering any question.

Hornes' trial testimony was essentially the same as her testimony at the preliminary examination, except that she claimed that she *first* struck defendant with a pipe and the defendant then took the pipe from her and hit her on her arm, back, and head. In response to defense counsel's questioning on cross-examination, Hornes testified that she told the prosecutor that she did not want to testify and that she wanted the charges dropped, and that the story she had previously told the police was different from what had actually occurred. Hornes stated that the prosecutor told her "to be in court and just get up there and testify to the truth or to testify to what I said before." On redirect examination, the prosecutor impeached Hornes with her preliminary examination testimony. Hornes explained that she had thought about her testimony after the preliminary examination and that is why she called the prosecution to explain that the incident was not as she had initially related.

Our review of the record fails to disclose witness intimidation by the prosecution such that defendant's right to call witnesses in his defense was impaired. The record indicates that, from the time the issue was first raised, the trial court deftly and conscientiously pursued a determination as to whether intimidation had in fact occurred and to take any and all necessary corrective measures.

In *People v Crabtree, supra,* the fourteen-year-old victim informed the prosecutor on the day before trial that she wanted to drop criminal sexual conduct charges against defendant and explained that defendant had not touched her and

that a police officer had pressured her into making the charge in the first place. The prosecutor responded with a thinly veiled threat of perjury. At trial, this episode was revealed to the court and jury only through defense counsel's cross-examination of the victim-witness. On redirect, the prosecutor announced for the record that he did not intend to prosecute the victim as a perjurer, that he was only interested in the truth. In a split decision, this Court stated:

> We recognize the dilemma of the prosecutor when confronted with such a situation. *But there were three additional problems which conclusively tilted the balance here toward reversal.* First, neither the trial court nor either of the counsel asked the young witness if she had in fact been intimidated by the threat. Justice ADAMS in *People v Pena, supra,* suggested this, in particular, was a question to be asked by the trial court. Here, the prosecutor even requested that the judge ask the witness the question, but the trial judge declined. Second, the prosecutor made no effort to bring the matter to the attention of the court, by examination or otherwise. Rather, a thorough cross-examination of the witness by defense counsel yielded the information which, it is clear, would never have been revealed otherwise. And finally, the prosecutor's announcement that he would not prosecute her for perjury—coming after she had testified against the defendant—was a blatant attempt to bolster the witness's credibility. Such stands as an independent error, but also combines, in aggregate, with the prosecutor's improper handling of the entire incident of the witness's attempted recantation. [*Crabtree, supra,* pp 725-726.]

The "additional problems" which led to reversal in *Crabtree* did not occur in this case. Here, an extensive evidentiary hearing was conducted regarding the alleged intimidation where the witness

was thoroughly questioned by the prosecutor, defense counsel and the court. Given the fact that Hornes did testify differently at the trial than at the preliminary examination (i.e., on the issue of whether she had hit the defendant with the iron pipe before he hit her), it does not appear that Hornes was intimidated into testifying consistent with her preliminary examination testimony. Even though her testimony had changed, the prosecutor sought neither to bolster nor discredit Hornes' testimony by announcing whether or not he intended to bring perjury charges against Hornes. Finally, the court took an additional protective measure of assigning counsel to Hornes and allowing her to fully consult with counsel regarding her testimony. Under the circumstances, we find no intimidation of Hornes by the police or prosecutor depriving defendant of his right to a fair trial.

II

Defendant next contends that he was deprived of a fair trial because the trial court encouraged Hornes to assert her Fifth Amendment rights in the jury's presence.

After defendant had presented several witnesses, defense counsel indicated that Hornes had asked to again be put on the stand. Outside the presence of the jury, the judge confirmed that Hornes had talked to her appointed counsel, that she wished to testify, and that she understood that she had a right not to testify to anything that might tend to incriminate her. Defense counsel then called Hornes as a defense witness. Hornes stated that she just wanted to invoke her Fifth Amendment privilege. The judge and counsel then left the courtroom to confer. Upon their return, defense counsel asked:

Bessie, is it true that just immediately before you testified that you told me yesterday that when you testified that you only testified partly to the truth or that your testimony was only partly true. Didn't you just tell me that?

The trial court then reminded the witness of her privilege against self-incrimination. After some further discussion outside the presence of the jury, and a further question from defense counsel, the witness indicated that she did not want to answer on the basis of her Fifth Amendment privilege.

A lawyer may not knowingly call a witness knowing that the witness will claim a valid privilege not to testify. *People v Dyer,* 425 Mich 572; 390 NW2d 645 (1986). In *People v Poma,* 96 Mich App 726, 733; 294 NW2d 221 (1980), this Court stated:

We hold that it is inherently prejudicial to place a witness on the stand who is intimately related to the criminal episode at issue, when the judge and prosecutor know that he will assert the Fifth Amendment privilege. When a judge determines at the evidentiary hearing that the intimate witness will either properly or improperly claim the protection against self-incrimination, he must not allow this witness to be called to the stand.

In the instant case, it was defense counsel who recalled the witness, Hornes, to the stand. Given that Hornes had already testified and had indicated to the court that she wanted to again testify, and given that it was defense counsel who called the witness, we cannot find that the court erroneously allowed Hornes to be recalled, knowing that she would assert the Fifth Amendment.

Nor do we find prejudicial error in the court's having readvised Hornes of her Fifth Amendment

privilege in front of the jury. While, as a general rule, it is preferable to inform the witness of his or her Fifth Amendment rights out of the jury's presence, *People v Callington, supra,* p 307, the danger of witness intimidation sought to be eliminated by the rule did not exist in this case. Here, neither the prosecutor nor the court were attempting to turn a willing witness into one who refused to testify. See *Callington, supra.* Under the circumstances and given defense counsel's question to the witness (which essentially asked the witness whether she had perjured herself the previous day), the trial court's reminding the witness of her privilege against self-incrimination was a legitimate warning.

III

Defendant next assigns error to certain of the trial court's instructions to the jury. This Court reviews jury instructions in their entirety in order to determine if error requiring reversal occurred. *People v Bender,* 124 Mich App 571, 574; 335 NW2d 85 (1983). Even where instructions are imperfect, there is no error requiring reversal if the instructions "fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant." *Bender, supra,* pp 574-575.

Defendant first claims that the trial court should have instructed the jury regarding witness Hornes' invocation of her Fifth Amendment right. However, defendant at no time requested such an instruction. Absent a request for the instruction, the court's failure to sua sponte give the instruction is not error requiring reversal. MCL 768.29; MSA 28.1052.

Defendant next claims that the following instruction should not have been given:

[*The Court*]: Now, you are not to consider whether the victim in this case requested dismissal of the charges in determining the guilt or innocence of the defendant, except as it may bear on her creditability [sic].

Following defense counsel's objection, the trial court ruled that the instruction was reasonable in view of the closing arguments and to make clear to the jury that the victim's desire not to pursue the charges was not evidence that the crime had not been committed.

Defendant contends that the instruction amounted to a charge that, because Hornes wanted to drop the charges against defendant, Hornes was lying. We disagree. It is proper for the court to instruct the jury to assess the credibility and incredibility of the witnesses. *People v Monroe,* 3 Mich App 165, 169; 141 NW2d 679 (1966), lv den 378 Mich 734 (1966), cert den 388 US 923; 87 S Ct 2126; 18 L Ed 2d 1372 (1967). The court's instruction was not improper.

Defendant next challenges the court's instruction on self-defense. The trial court read CJI 7:9:01 on use of deadly force in self-defense. Defendant claims that the court should have instead read to the jury CJI 7:9:09 on use of nondeadly force in self-defense or defense of others. Defense counsel did not, however, object at trial to the instruction as given. This Court will not set aside the verdict unless the instruction resulted in a miscarriage of justice. *People v Burgess,* 153 Mich App 715, 726; 396 NW2d 814 (1986), lv den 428 Mich 868 (1987).

In *People v Pace,* 102 Mich App 522, 534; 302 NW2d 216 (1980), this Court defined use of deadly force as "where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death." Although we suggested in

*Pace, supra,* p 534, n 7, that in a case where the evidence is conflicting on whether deadly force has been employed the trial court shall preface CJI 7:9:01 with a statement to the effect that "If you find that defendant utilized deadly force . . . ," that the preface was not delivered in the instant case did not create a miscarriage of justice. The testimony regarding defendant's striking of Hornes with a large iron pipe and the evidence presented concerning Hornes' injuries reveal acts such that the natural, probable and foreseeable consequence of such acts is death. The giving of CJI 7:9:01 was not erroneous.

Defendant additionally claims that the court erroneously charged the jury regarding the nonavailability of a defense of self-defense if the jury found beyond a reasonable doubt that defendant was engaged in a breaking and entering of Hornes' home with intent to commit a felony and with intent to commit an assault with a dangerous weapon. Again, defendant did not object at trial and defense counsel pronounced satisfaction with the court's instruction on self-defense. Since a defense of self-defense is unavailable to the aggressor in a conflict, *People v Maclin,* 101 Mich App 593, 595-596; 300 NW2d 642 (1980), we do not believe that the instruction, as given, resulted in a miscarriage of justice.

IV

Defendant next argues that the trial court abused its discretion in allowing the prosecutor to impeach defendant with evidence of a prior misdemeanor conviction for receiving and concealing stolen property under the value of $100. MRE 609, as amended by the Supreme Court in *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), bars

impeachment by evidence of a prior conviction not punishable by more than one year of imprisonment unless dishonesty or false statement was an element of that prior offense. *Allen, supra,* pp 605-606, n 31. The trial in the instant case took place prior to the effective date of the amendment of MRE 609. *Allen, supra,* pp 608-609. Prior to amendment, MRE 609 permitted impeachment by misdemeanors involving theft, dishonesty, or false statement.

The "clarified balancing test" set forth in *Allen, supra,* does apply in the instant case. *Allen, supra,* p 609. In determining whether the trial court abused its discretion in finding that the probative value of the evidence of the prior conviction outweighed its prejudicial effect, we bear in mind the following:

> For purposes of the probativeness side of the equation, only an objective analysis of the degree to which the crime is indicative of veracity and the vintage of the conviction would be considered, not either party's need for the evidence. For purposes of the prejudice factor, only the similarity to the charged offense and the importance of the defendant's testimony to the decisional process would be considered. The prejudice factor would, of course, escalate with increased similarity and increased importance of the testimony to the decisional process. Finally, unless the probativeness outweighs the prejudice, the prior conviction would be inadmissible. [*Allen, supra,* p 606.]

We do not believe the trial court abused its discretion in allowing impeachment with evidence of defendant's 1979 misdemeanor conviction for receiving and concealing stolen property. The prior conviction was probative on the issue of defendant's veracity. The prior conviction was completely dissimilar to the instant charge. And, while

defendant's own testimony was important to his claim of self-defense, it was not his only means of presenting his defense, as Hornes' testimony supported defendant's self-defense theory.

V

Defendant next argues that he was denied a fair trial by the trial court's sustaining the prosecutor's objection to a question to Hornes by defense counsel as to whether, in Hornes' opinion, Hornes' daughter had been in a position to see defendant come through the front door. Even if Hornes had been in such a position, since Hornes' daughter testified that she heard the defendant kick down the door, and since Hornes herself testified that the defendant kicked down the door, any improper rejection of the evidence was harmless.

VI

Defendant finally asserts he is entitled to a new trial because of prosecutorial misconduct. The test of prosecutorial misconduct warranting reversal is whether the defendant was denied a fair and impartial trial.

We have reviewed each of the allegations of prosecutorial misconduct and do not find that any instance, alone or cumulatively, denied defendant a fair and impartial trial. Each of the complained-of acts was followed by an appropriate objection and adequate curative instruction by the trial court.

Affirmed.