# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DENORIA LUCCI SMITH, a/k/a DENORIO
SMITH,

      Defendant-Appellant.

UNPUBLISHED
August 11, 2016

No. 326462
Wayne Circuit Court
LC No. 14-003750-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MALIK BENASIDE RAY-EL,

      Defendant-Appellant.

No. 326808
Wayne Circuit Court
LC No. 14-003750-01-FC

---

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants, Denoria Smith and Malik Ray-El, appeal by right their convictions after a joint trial before a single jury. In Docket No. 326462, Smith appeals his jury convictions of assault with intent to do great bodily harm, MCL 750.84, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 326808, Ray-El appeals his jury convictions of assault with intent to commit murder, MCL 750.83, and felony-firearm. Because we conclude there were no errors warranting a new trial, we affirm in both appeals.

## I. SUFFICIENCY OF THE EVIDENCE

### A. STANDARDS OF REVIEW

Smith first challenges the sufficiency of the evidence supporting his convictions. Ray-El raises a similar claim that the trial court erred when it denied his motion for a directed verdict on

the charge of assault with intent to commit murder. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "A challenge to the trial court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence." *People v Lewis* (*On Remand*), 287 Mich App 356, 365; 788 NW2d 461 (2010), vacated in part on other grounds 490 Mich 921 (2011). The difference is that the trial court may consider only the evidence presented up to the time of the motion. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979).

In reviewing the sufficiency of the evidence, this Court reviews the record evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crimes were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Circumstantial evidence and reasonable inferences drawn therefrom are sufficient to prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). It is for the trier of fact to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). All conflicts in the evidence are to be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

### B. ELEMENTS

In order to prove assault with intent to commit murder, the prosecution must present evidence that the defendant committed an assault with an actual intent to kill and which, if successful, would make the killing murder. *Hoffman*, 225 Mich App at 111. "A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). "Specific intent to kill is the only form of malice which supports the conviction of assault with intent to commit murder." *People v Cochran*, 155 Mich App 191, 193; 399 NW2d 44 (1986). "The intent to kill may be proved by inference from any facts in evidence," *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), and "minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

A person is guilty of committing an assault with intent to do great bodily harm less than murder, by contrast, if he or she assaults another and does so with an intent to do great bodily harm less than murder. *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). Assault with intent to do great bodily harm is a specific intent crime. *Id.* The defendant must have "intend[ed] to do serious injury of an aggravated nature," *People v Mitchell*, 149 Mich App 36, 39; 385 NW2d 717 (1986), but "it is not necessary for any actual injury to occur," *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013). The defendant's intent may be inferred from all the facts and circumstances surrounding the crime, *People v Lugo*, 214 Mich App 699, 709-710; 542 NW2d 921 (1995), including the defendant's acts, the means employed to commit the assault itself, and the extent of the victim's injuries, if any. *People v Harrington*, 194 Mich App 424, 430; 487 NW2d 479 (1992); *People v Cunningham*, 21 Mich App 381, 384; 175 NW2d 781 (1970). The charges of felon in possession of a firearm and felony-firearm both require evidence that the defendant possessed or carried a gun. MCL 750.224f(1), (2); MCL 750.227b(1).

Finally, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The prosecutor is not required to present direct evidence linking the defendant to the crime." *People v Saunders*, 189 Mich App 494, 495; 473 NW2d 755 (1991). The defendant's identity may be proved by circumstantial evidence. See *People v Garcia*, 33 Mich App 598, 600; 190 NW2d 347 (1971).

## C. ANALYSIS

The prosecution presented evidence that Deandre Banks drove to a housing complex where Brittany Rogers lived. His stated reason for being there was to meet two teenage boys who were selling some cell phones. Banks testified that while he was in his car talking to the two boys, two men entered the parking lot together and then split up, one approaching the front and one approaching the rear.

A surveillance video of the parking lot showed one man, whom Rogers identified as Ray-El, approaching the driver's side of Banks's car. Banks said that that man fired a gun at him and he (Banks) drove off. The video showed the man identified as Ray-El firing a shot, falling, getting up, and then firing several more shots at Banks's car as Banks drove away. Banks testified that he could hear a different gun firing at him as he drove away. The surveillance video showed Banks driving away to the left and gunshots could be heard after Ray-El lowered his arm and turned away from the vehicle, which indicated that a second gunman was present. Evidence showed that Banks's car was struck at least three times and Banks himself suffered a gunshot wound to the leg. The surveillance video showed the visible gunman—identified as Ray-El—and the two boys all running off to the right. Moments later, a fourth person, whom Rogers identified as Smith, entered camera range from the left and ran after the other three. Rogers testified that moments after she heard the gunshots, Smith, Ray-El, and the two boys ran into her home and Ray-El had a gun in his hand. This evidence, if believed, supported an inference that Smith was present and that he was the second shooter.

The evidence that Smith and Ray-El intentionally shot at someone within range and under circumstances that did not justify, excuse, or mitigate the shooting, was sufficient to prove assault with intent to commit murder. *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988); *People v Johnson*, 54 Mich App 303, 304; 220 NW2d 705 (1974). It was also sufficient to prove an assault with the intent to do great bodily harm. *Parcha*, 227 Mich App at 239. Therefore, there was sufficient evidence to establish that Smith and Ray-El in fact possessed firearms, shot at Banks, and did so with the requisite intent. Consequently, there was sufficient evidence to support their convictions and the trial court did not err when it denied the motion for a directed verdict.

## II. EVIDENTIARY ERROR

## A. STANDARD OF REVIEW

Both Smith and Ray-El challenge the trial court's decision to admit other-acts evidence under MRE 404(b). We review the trial court's decision to admit the other-acts evidence for an abuse of discretion, *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002), which occurs

when the court selects an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

## B. ANALYSIS

Only relevant evidence is admissible. MRE 402.

> Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue. Evidence is probative if it tends to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence[.] [*People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015) (internal quotation marks and citations omitted).]

Although relevant, evidence of other acts is not admissible to prove bad character and show that the person acted in conformity with his or her bad character. MRE 404(b)(1); *People v Gimotty*, 216 Mich App 254, 259; 549 NW2d 39 (1996). Other acts evidence, however, is admissible—notwithstanding that it implicates character—for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident" if that purpose is material. MRE 404(b)(1). To be admissible, the other-acts must be offered for a proper purpose, must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). If such evidence is admitted, the trial court should give a limiting instruction regarding its use. See *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993).

The fact that evidence is damaging does not mean it is unfairly prejudicial because "[a]ny relevant testimony will be damaging to some extent." *Sclafani v Peter S Cusimano, Inc*, 130 Mich App 728, 735; 344 NW2d 347 (1983). Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Instead, "unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit[.]" *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). Generally, evidence is unfairly prejudicial if there is "a danger that marginally probative evidence will be given undue weight or preemptive weight by the jury," *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998), if it would lead the jury to decide the case on an improper basis such as emotion, *People v Meadows*, 175 Mich App 355, 361; 437 NW2d 405 (1989), or if "it would be inequitable to allow the use of the evidence," *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

After the shooting incident involving Banks, the surveillance recording showed two men, whom Rogers identified as Smith and Ray-El, walking back to the parking lot where the shooting occurred. Within moments, the back of a pickup truck could be seen backing out of a parking space; Rogers identified it as Ray-El's red pickup truck.

-4-

At trial, the prosecution presented two photos of a red Sierra pickup truck; one of which depicted Ray-El standing next to the truck. The other-acts evidence consisted of two robberies that were committed the day after the shooting incident. Erin Smith and Dana Anderson were both robbed at about the same time within blocks of one another and each victim's cell phone was taken.

Evidence showed that Anderson's phone was equipped with a phone-tracking application that uses the phone's internal global positioning system (GPS) to locate the phone and the information can be obtained via the Internet through another device. The man who robbed Erin Smith was physically similar to Ray-El, and the man who robbed Anderson was physically similar to Smith. Anderson's robber was last seen walking in the direction of a red pickup truck. The phone-tracking app led to Rogers's house, and a red Sierra pickup truck was parked outside. After a time, the phone-tracking app showed that Anderson's phone was moving and it was tracked directly to Smith and Ray-El a few blocks away. Officers arrested them and discovered that Ray-El was in possession of Erin Smith's phone and Smith was in possession of Anderson's phone. Less than an hour had passed since the robberies. This evidence permitted an inference that Ray-El and Smith robbed Erin Smith and Anderson. See *People v Mosley*, 107 Mich App 393, 397; 309 NW2d 569 (1981). Further, the fact that Smith gave a false statement about having purchased Anderson's phone permitted an inference that Smith was conscious of his guilt. *People v Wolford*, 189 Mich App 478, 481-482; 473 NW2d 767 (1991).

This evidence showed that Smith and Ray-El committed the robberies and then went to Rogers's house, which was the same place they went after the shooting at issue here. The evidence was relevant to show that Smith and Ray-El used Rogers's house as a place of refuge and, because there was evidence that Ray-El and Smith appeared at Rogers's home shortly after the shooting, the other acts evidence permitted an inference that Ray-El and Smith again sought refuge at Rogers's home because they had just engaged in illegal conduct. It also explained why Smith and Ray-El went to Rogers's home even though she had no apparent connection to the shooting. Taken together, the evidence made it more likely that the persons who fled the scene of the shooting, as shown in the surveillance recording, were the same persons who entered Rogers's house moments later; therefore, it tended to prove Smith and Ray-El's identity as Banks's shooters. The evidence was thus relevant and probative for reasons other than their propensity for criminal behavior. Because identity was a critical issue in this case, the evidence had significant probative value and was not so inflammatory as to distract the jury from its duties, and thus its prejudicial effect did not substantially outweigh its probative value. MRE 403. Further, the trial court gave a limiting instruction, cautioning the jury that the evidence could only be considered for limited reasons and not for any other purpose, which lessened the potential for any unfair prejudice.

The trial court did not abuse its discretion in admitting the other-acts evidence.

-5-

## III. SMITH'S REMAINING ISSUE

### A. STANDARD OF REVIEW

Smith lastly argues that he is entitled to a new trial due to prosecutorial error. The test for prosecutorial error warranting relief is whether the defendant was denied a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003).

### B. ANALYSIS

Smith argues the prosecutor erred by asking officer Roland Brown to comment on Rogers's credibility. Because Smith did not object at trial, we review this claim for plain error affecting Smith's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A prosecutor may not knowingly offer or attempt to elicit inadmissible evidence. *People v Dyer*, 425 Mich 572, 576; 390 NW2d 645 (1986). However, it is not error for a prosecutor to attempt to admit evidence in good-faith. *Abraham*, 256 Mich App at 278.

During cross-examination, both Smith and Ray-El elicited testimony from Rogers that, despite her arrest, she was not charged with any offenses after she provided information to officers. The prosecutor later asked Brown to explain why Rogers was not charged:

> I didn't request a warrant for Ms. Rogers because the burden of proof being to me whether or not there was sufficient evidence to charge her with the guns inside the home.
>
> One, I would have to prove that Ms. Rogers had knowledge that the weapons were in the home to begin with. Therefore, I felt there was no need for me to charge her. And I did not submit a warrant because I believed what she said.

It is improper for the prosecutor to ask one witness to comment on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Even assuming that the testimony was improper, the prosecutor did not ask Brown to comment on Rogers's credibility. *People v Musser*, 494 Mich 337, 351-353; 835 NW2d 319 (2013). He merely asked Brown why he did not pursue criminal charges against Rogers, and that question did not even intimate that the prosecutor wanted Brown to opine on her credibility. Instead, Brown volunteered his opinion. "Unresponsive answers from witnesses are generally not prosecutorial error." *People v Jackson (On Reconsideration)*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 8. A defendant may be denied a fair trial "if the prosecution knew in advance that the witness would respond in the manner indicated or somehow conspired or encouraged the response to which the objection is taken," *People v Barker*, 161 Mich App 296, 307; 409 NW2d 813 (1987), but Smith has made no such showing here. Further, "[a]ny mischief worked by reason of the unexpected and volunteered response could have been cured by a curative instruction had defense counsel moved for a curative instruction," *id*., and this Court will not reverse on the basis of an unpreserved claim of prosecutorial error when a curative instruction could have alleviated any prejudice. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). Therefore, this aspect of Smith's claim must fail.

Smith also contends that the prosecutor erred by seeking the admission of the other-acts evidence and three photos obtained from Smith's cell phone. These matters were addressed at pretrial hearings and the trial court ruled that the evidence was admissible. It is not error on the part of the prosecutor "to introduce evidence expressly permitted by the trial judge." *People v Curry*, 175 Mich App 33, 44; 437 NW2d 310 (1989).

There were no prosecutorial errors warranting relief.

## IV. RAY-EL'S REMAINING ISSUES

## A. PHOTOGRAPHIC EVIDENCE

Ray-El argues that the trial court abused its discretion in admitting three photographs into evidence. One photo shows Ray-El and another person standing by a red Sierra pickup truck, another photo shows the truck by itself, and a third photo shows Ray-El sitting in a vehicle with a handful of money and a gun on his lap. We review the trial court's decision to admit the photos for an abuse of discretion. See *Hine*, 467 Mich at 250.

Ray-El does not discuss this issue as it relates to each photograph. The photograph showing Ray-El with the Sierra pickup truck was relevant because it provided a basis for linking Ray-El to a red pickup truck, which both supported Rogers's testimony that Ray-El frequently drove a red pickup truck and contradicted a defense witness's testimony that Ray-El did not have a vehicle. The photograph showing the truck by itself was also relevant because its bed was similar to that of the truck shown in one of the surveillance recordings, thus supporting Rogers's testimony that it was Ray-El's truck in the recording. There is nothing particularly prejudicial about either of these two photographs apart from their probative value connecting Ray-El to the truck. The thrust of Ray-El's argument is directed at the third photograph depicting him holding money and possessing a handgun. The surveillance recording showed that the visible gunman, identified as Ray-El, possessed a handgun. Evidence that a defendant possessed a weapon of the kind used in the offense with which he is charged is generally relevant to prove that the defendant committed the offense and is not precluded by MRE 404(b). *People v Hall*, 433 Mich 573, 580-584 (BOYLE, J.), 589 (BRICKLEY, J., concurring); 447 NW2d 580 (1989). While the photograph portrays Ray-El in a bad light, it was not so inflammatory as to distract the jury from its duties and thus its prejudicial effect did not substantially outweigh its probative value. MRE 403.

The trial court did not abuse its discretion in admitting the photographs.

## B. MOTION TO SUPPRESS

## 1. STANDARDS OF REVIEW

Ray-El next argues that the trial court erred in denying his motion to suppress all evidence obtained by officers after they used Anderson's phone-tracking application to locate him and Smith. We review de novo the trial court's ruling on a motion to suppress. *People v Garvin*, 235 Mich App 90, 96; 597 NW2d 194 (1999). We review de novo the proper application of the exclusionary rule. *People v Custer*, 465 Mich 319, 326; 630 NW2d 870 (2001).

## 2. ANALYSIS

Relying on *United States v Jones*, 565 US ___; 132 S Ct 945; 181 L Ed 2d 911 (2012), and *Kyllo v United States*, 533 US 27; 121 S Ct 2038; 150 L Ed 2d 94 (2001), Ray-El argues that the use of the GPS technology constituted a search requiring a warrant. "The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). Fourth Amendment interests are only implicated when the government infringes upon a person's reasonable expectation of privacy. *People v Smith*, 420 Mich 1, 25; 360 NW2d 841 (1984). "An expectation of privacy is legitimate only if the individual exhibited an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable." *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002).

The *Jones* case involved the government's installation of a GPS tracking device on the defendant's car, which relayed volumes of data regarding the vehicle's location. *Jones*, 132 S Ct at 948-949. The Court reasoned that a vehicle is an "effect" protected by the Fourth Amendment and by installing the GPS device, the government "obtain[ed] information by physically intruding on a constitutionally protected area, such that a search has undoubtedly occurred." *Id*. at 949-950 n 3. The *Kyllo* case involved the use of a thermal imager to determine whether an unusually high amount of heat consistent with the use of marijuana grow lamps was emanating from the defendant's house. *Kyllo*, 533 US at 29. A house is an area protected by the Fourth Amendment and a search occurred because the government intruded into that protected area by using sense-enhancing technology to obtain information about the interior of the home. *Id*. at 34-35.

In this case, Ray-El has not identified a constitutionally protected area into which officers intruded without a warrant. The officers did not plant a tracking device on Ray-El or on his vehicle and did not use sense-enhancing technology to see into his house or some other protected area. Indeed, the use of the phone-tracking application had nothing to do with Ray-El at all; the officers tracked Anderson's phone, which was found in Smith's possession. Ray-El just happened to be in Smith's company when Anderson's phone was tracked to Smith's location. But neither Smith nor Ray-El had a reasonable expectation of privacy in information transmitted by Anderson's stolen phone. Therefore, Ray-El has not shown that he was subjected to a warrantless search at any time before he was physically searched, and Ray-El does not raise any issues regarding the physical search of his person. The trial court properly denied Ray-El's motion to suppress.

## C. RAY-EL'S BRIEF ON HIS OWN BEHALF

Ray-El raises additional issues in a brief that he submitted on his own behalf.

Ray-El contends that his lawyer was ineffective for failing to call various persons who were in Rogers's house on the night of the shooting ostensibly because they could have provided exculpatory testimony. Because the trial court did not hold a hearing on this issue, our review "is limited to mistakes apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). To establish ineffective assistance of counsel, Ray-El must "show both that

counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

The record shows that Martez Fulton, one of the four persons whom Ray-El contends his lawyer should have called, was not at Rogers's house on the night of the shooting, but was there the following night when Rogers was arrested. As for the other witnesses, there is nothing in the record to suggest what they might have testified about had they been called. Thus, there is no basis for concluding that any of the four witnesses could have contradicted the prosecution's case or provided Ray-El with testimony favorable to the defense. Accordingly, the record does not support Ray-El's claim that counsel was ineffective for failing to investigate and call the witnesses. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002).

Ray-El also argues that his lawyer should have obtained witness statements and police reports and used them to impeach the witnesses' testimony. There is nothing in the record to show that counsel did not have any relevant witness statements or reports. To the contrary, his lawyer advised the trial court that "Mr. Sterbis has had an open file. He's turned over everything that . . . he had at the beginning that he acquired as it went on." Further, Ray-El has not offered anything to show that any statements or police reports contained any information of impeachment value that was not utilized at trial. Therefore, this aspect of Ray-El's claim is not supported by the record.

Ray-El further argues that counsel was ineffective for not demanding a bill of particulars. The record shows that Ray-El exercised his right to a preliminary examination, MCR 6.110(A), thereby requiring the prosecutor to present evidence sufficient to support probable cause to believe that the Ray-El committed the charged crimes. MCR 6.112(E); *People v McBride*, 204 Mich App 678, 681; 516 NW2d 148 (1994). The preliminary examination testimony fulfilled the function of informing Ray-El of "the nature and the elements of the charges against him," thus obviating the need for a bill of particulars. *People v Jones*, 75 Mich App 261, 270; 254 NW2d 863 (1977). Therefore, counsel was not ineffective for failing to demand a bill of particulars.

Ray-El's last unpreserved claim of prosecutorial error is based on Banks's testimony that he was reluctant to assist the police officers in their investigation of the shooting and gave them a false statement so they would leave him alone. Intimidation of prosecution witnesses is not common, but is nonetheless improper. *People v Clark*, 172 Mich App 407, 409; 432 NW2d 726 (1988). The record shows that Banks may have been pressured to cooperate in the investigation, but there is nothing in the record to show that it had any effect that would amount to a denial of Ray-El's due process rights. *People v Canter*, 197 Mich App 550, 569-570; 496 NW2d 336 (1992). There could not have been witness intimidation of the type involved in *People v Crabtree*, 87 Mich App 722; 276 NW2d 478 (1979), because Banks never denied that he was shot, but always maintained that he could not identify the shooters. Nor is there anything in the record to suggest that Banks was intimidated into providing testimony that was untrue. See *People v Stacy*, 193 Mich App 19; 484 NW2d 675 (1992). Although Banks's credibility was called into question by his admission that he lied to the officers, that information was elicited by counsel for the jury's consideration. Because the record does not support Ray-El's claim of prosecutorial error in the form of witness intimidation, Ray-El's related claim of ineffective assistance of counsel is also meritless.

Ray-El's claim regarding the jury instructions has been waived because counsel approved the instructions as given. *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004). In any event, we find nothing improper in the trial court's instructions regarding the intent element for assault with intent to commit murder. The trial court duly instructed the jury that, to convict Ray-El of that offense, the prosecutor must prove that Ray-El "intended to kill the person he assaulted." Accordingly, there was no plain error.

Finally, because we find no merit to Ray-El's claims of error, we reject his claim that he was denied a fair trial due to the cumulative effect of several minor errors. *People v Anderson*, 166 Mich App 455, 472-473; 421 NW2d 200 (1988).

There were no errors warranting relief in either docket.

Affirmed in both dockets.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause