*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

FREDERICK DWAYNE GARTH, JR.,

      Defendant-Appellant.

UNPUBLISHED
September 12, 2019

No. 341304
Genesee Circuit Court
LC No. 16-040555-FC

Before: MURRAY, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of four counts of first-degree criminal sexual conduct (CSC I)—two under MCL 750.520b(1)(a) (victim less than 13 years old), and two under MCL 750.520b(1)(b) (victim between 13 and 15 years old). The trial court sentenced defendant to 25 to 50 years of imprisonment for each of the former convictions and 17 to 35 years of imprisonment for each of the latter convictions. The trial court later amended defendant's judgment of sentence to include lifetime monitoring. We affirm.

Defendant's convictions are the result of his sexual misconduct with three of his cousins (the complainants). The complainants lived with their grandmother for four years beginning in 2009, during which time defendant would frequently visit the home. Each complainant testified that, during the time they lived with their grandmother, defendant forced them to perform oral sex on him, having them pretend that his penis was a remote control. Each complainant was assaulted three to six times.

These early assaults, however, do not form the basis for defendant's convictions. Rather, defendant's convictions result from his assaults of the complainants after they moved out of their grandmother's home, but when they were visiting their grandmother at a new address. Two of the complainants testified that defendant forced them to perform oral sex on him on multiple occasions during their visits. At least one of these complainants refused defendant's suggestion of penile-vaginal intercourse. The third complainant, however, testified that defendant tricked her into taking her clothes off and forced her to have penile-vaginal intercourse with him and that the intercourse occurred on two occasions.

-1-

# I. CLOSED DISTRICT COURTROOM

Defendant first argues that the district court erred by closing the preliminary examination to the public. At the beginning of the preliminary examination, the prosecutor requested that the district court close the courtroom because of the young ages of three witnesses who had requested the closure. Without explanation, the district court ordered closure to the public except for the officers in charge and a support person.

"The decision to close a preliminary examination to the public is discretionary, subject to reversal only for an abuse of discretion." *In re Closure of Preliminary Examination*, 200 Mich App 566, 569; 505 NW2d 24 (1993). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Because the Legislature created the procedure, "the preliminary examination is not a procedure that is constitutionally based."[1] *People v Hall*, 435 Mich 599, 603; 460 NW2d 520 (1990). The Legislature has provided for the exclusion of the public from preliminary examinations in particular circumstances, including when there is a need for protection of a victim—particularly a child victim—that outweighs the public's right to access. MCL 766.9. Nonetheless, before an examination may be closed, the magistrate must state "on the record the specific reasons for his or her decision," MCL 766.9(1)(c), considering the psychological condition of the witness, the witness's desire to close the proceedings to the public, and the nature of the offense, MCL 766.9(2).

Here, the district court erred by closing the preliminary examination to the public without specifying the reasons for its decision. Nonetheless, "errors in the preliminary examination proceedings do not require reversal per se on an appeal from a subsequent trial." *Hall*, 435 Mich at 609. Rather, an error is "presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002) (internal citation and quotation marks omitted). Defendant was given a public trial after the preliminary examination. Defendant does not argue that insufficient evidence was produced at the preliminary examination to bind him over for trial. Rather, defendant argues that the evidence from the closed preliminary examination tainted his public trial because it was used to refresh the memory of the witnesses. Yet, defendant does not argue that the victims' testimony would have been different had the examination been open to the public nor does he otherwise explain how exactly the evidence tainted the public trial. Defendant notes that the public-proceedings requirement is intended to ensure that the judge and prosecutor carry out their duties responsibly and to discourage perjury. Yet, outside of closing the proceedings, defendant does not argue that the judge or prosecutor made any error during the preliminary examination or that the private nature of the proceeding encouraged the witnesses to testify falsely. Similarly, defendant argues that the error is structural, entitling him to automatic

---

[1] Therefore, we reject defendant's arguments that the Sixth Amendment compels this Court to remand for a new preliminary examination.

reversal, but does not provide any authority indicating that an error under MCL 766.9 is structural.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (internal citation and quotation marks omitted). Therefore, we conclude that, despite the district court's failure to explain its reasoning for closing the preliminary examination, defendant is not entitled to relief. See *In re Closure of Preliminary Examination*, 200 Mich App at 570-571 (declining to reverse a conviction after a public trial for errors at a closed preliminary examination).

## II. WITNESS INTIMIDATION

Next, defendant argues that the trial court erred by denying his motion for a mistrial. Defendant argues that the declaration of a mistrial was necessary because the prosecution intimidated several defense witnesses by charging them with witness tampering in an effort to prevent them from testifying in defendant's favor. We review de novo whether defendant was denied his constitutional right to present a defense, *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002), and review for an abuse of discretion, the trial court's decision regarding a motion for a mistrial, *People v Ortiz-Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (1999).

The constitutional right to present a defense encompasses "the right to offer the testimony of witnesses, and to compel their attendance." *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012) (internal citation and quotation marks omitted). A prosecutor may impeach a defense witness, but, as an officer of the court, "may not intimidate the witness, in or out of court." *People v Clark*, 172 Mich App 407, 409; 432 NW2d 726 (1988) (internal citation and quotation marks omitted). In determining whether a prosecutor has intimidated witnesses, this Court "examines the pertinent portion of the record and evaluates the alleged wrongful acts in context on a case-by-case basis." *Id*. (internal citation and quotation marks omitted).

Defendant argues that a mistrial was necessary because the prosecution intimidated defendant's mother, Kalida Durrett, and grandmother, Bobbi Watkins, into abstaining from testifying in defendant's favor. During the trial, Durrett and Watkins were both charged with witness tampering and chose to invoke their Fifth Amendment right not to testify. Defendant argues that the prosecution brought witness tampering charges against Durrett and Watkins in an effort to prevent them from testifying at trial. We disagree.

Throughout trial, the prosecution had difficulty securing the attendance of the complainants for their testimony. One complainant testified that several members of her family, including Watkins, were pressuring her to not testify against defendant. Another complainant said that Watkins tried to prevent her from testifying, that they were not present for the second day of trial because their guardian had to think about whether they should attend, and that the police had to transport them to court. Similarly, Durrett was recorded telling defendant that he did not have to worry because she and others were working on keeping the complainants from testifying.

There is no evidence from which we can conclude that the prosecution brought the charges against defendant's mother and grandmother for any improper purpose. If believed, the above record establishes that Durrett and Watkins did in fact tamper with the prosecution's witnesses. The trial court was informed about their interference and Durrett and Watkins were represented by counsel. They were able to confer with counsel and, outside the presence of the jury, invoked their privilege against self-incrimination. Their decisions to not testify were based on their legal situations, rather than on any tactics of the prosecutor. Defendant's argument to the contrary is without merit.

## III. RIGHT TO CROSS-EXAMINATION

Defendant next argues that the trial court denied him his right of cross-examination by denying his motion to admit evidence of the juvenile probation status of one of the complainants. We disagree.

The central protection offered by the Confrontation Clause of the Sixth Amendment is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *People v Levine*, 231 Mich App 213, 219-220; 585 NW2d 770 (1998). A defendant is "guaranteed a reasonable opportunity to test the truth of a witness's testimony," *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), and "a broad range of evidence may be elicited on cross-examination for the purpose of discrediting a witness." *Wischmeyer v Schanz*, 449 Mich 469, 474; 536 NW2d 760 (1995). "The scope of cross-examination is within the discretion of the trial court." *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992). The Confrontation Clause does not include the right to cross-examine on any subject, and there is no "right to cross-examine on irrelevant issues." *Adamski*, 198 Mich App at 138.

Before the third day of trial, the prosecutor informed the trial court that one complainant was on juvenile probation for retail fraud after she stole lipstick. The trial court excluded evidence of the retrial-fraud conviction under MRE 609. On appeal, defendant agrees that the conviction could not be used to impeach the complainant under MRE 609, but argues that the trial court erred by excluding the evidence because it was relevant to demonstrate why the complainant would have a reason to fabricate her allegations. The complainant however, had already been adjudicated on the retail-fraud charge and there is no evidence that she would receive any favorable treatment on her sentence for that charge in exchange for testifying against defendant. Simply put, there is no relevant connection between the retail-fraud conviction and the assault crimes at issue here. Accordingly, the trial court properly excluded the evidence as pertaining to irrelevant collateral matters.

## IV. PRIOR ACTS OF SEXUAL ABUSE

Defendant next argues that the trial court erred by allowing evidence of his other acts of sexual misconduct with the complainants. We review the trial court's admission of evidence for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005).

The prosecution successfully moved to admit evidence of defendant's uncharged criminal sexual conduct with the complainants pursuant to MCL 768.27a. MCL 768.27a provides, in

pertinent part, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). Evidence introduced under MCL 768.27a may be considered for any matter for which it is relevant, including "the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).

Evidence admissible under MCL 768.27a remains subject to exclusion under MRE 403. *Watkins*, 491 Mich at 481. "Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (internal citation and quotation marks omitted). When making its determination under MRE 403, the trial court may consider the following nonexhaustive list of factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).]

"[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

Here, each of the three complainants testified separately that defendant had forced them to perform oral sex on him while they lived at their grandmother's home. One complainant testified that the oral sex occurred about five times; another testified that the encounters happened to her five or six times, and the third reported two or three other instances of oral sex. Defendant does not argue that this evidence was inadmissible under MCL 768.27a; rather, he argues that the evidence should have been excluded under MRE 403. We disagree. The prior acts involved the same victims and were quite similar to several of the charged acts. Moreover, each act occurred at the grandmother's home and there were no intervening events that disrupted the continuity of the sexual contact. The similarities between defendant's courses of conduct with all three complainants rendered the evidence particularly probative, especially in light of defendant's theory that the complainants had manufactured the allegations. In short, the evidence was not unfairly prejudicial. The trial court did not err by declining to exclude the evidence under MRE 403.[2]

---

[2] Defendant argues that the trial court did not provide sufficient analysis to determine whether the evidence was unfairly prejudicial. The trial court stated that the uncharged offenses were "sexual offenses against minors," and that "the probative value of such evidence is appropriate and the prejudicial effect of that, if any, is outweighed by the probative value of the evidence." While the trial court's analysis was not the most thorough, it was sufficient to indicate that the

# V. AMENDED SENTENCE

Finally, defendant argues that the trial court erred by amending defendant's judgment of sentence, without a motion from either party, to include lifetime electronic monitoring. We agree that the trial court was without authority to enter the amendment, but affirm the amended sentence under MCR 7.216(A)(8).

Defendant was sentenced for four counts of CSC I, which subjected him to mandatory lifetime electronic monitoring. MCL 750.520b(2)(d) (stating that "the court *shall* sentence the defendant to lifetime electronic monitoring") (emphasis added); *People v Comer*, 500 Mich 278, 290; 901 NW2d 553 (2017) (holding that the Legislature intended to "mandate lifetime electronic monitoring for all CSC I sentences in which the defendant has not been sentenced to life without parole."). Nonetheless, defendant's initial judgment of sentence did not order lifetime electronic monitoring. In other words, defendant's original sentence was invalid. *Comer*, 500 Mich at 292. Thirteen days after the judgment issued, the Department of Correction sent a notice to the trial court indicating that it had omitted mandatory lifetime electronic monitoring. The following day, the trial court issued an amended judgment of sentence that provided for lifetime electronic monitoring. Neither party had filed a motion to amend.

The failure to impose lifetime electronic monitoring at the sentencing hearing and in the judgment of sentence was a substantive mistake. *Comer*, 500 Mich at 293. Again, the trial court was required to sentence defendant to mandatory lifetime monitoring. Nonetheless, at the time the trial court entered the amended judgment, it did not have statutory authority to sua sponte amend an invalid sentence. See MCR 6.429, effective from October 1, 1989 until September 1, 2018. Rather, the trial court could only amend the judgment on the motion of a party. See *Comer*, 500 Mich at 294. Accordingly, because neither party moved the trial court to amend the judgment, application of the rule in effect at the time the trial court amended the judgment would require us to vacate the amended judgment of sentence, thereby reinstating the original invalid sentence.

Effective September 1, 2018, MCR 6.429(A) now grants the trial court authority to correct an invalid judgment sua sponte, provided that the trial court gives the parties an opportunity to be heard on the motion and makes the change within 6 months after entry of the initial judgment of sentence. Here, however, more than 6 months have passed since entry of the initial judgment, meaning that, were we to vacate the amended judgment under MCR 6.429, the trial court would not have sua sponte authority to amend the original, invalid, judgment.

The updated version of MCR 6.429 still provides for the amendment of an invalid sentence on the motion of a party, but that motion must be made before a claim of appeal has been filed. MCR 6.429(B)(2). Recognizing this procedural limitation, plaintiff asks this Court

---

trial court balanced the probative value of the evidence against its prejudicial effect, concluding that the evidence was not unfairly prejudicial. Accordingly, the trial court's analysis was sufficient to avoid a remand.

to remand to the trial court to provide plaintiff an opportunity to file a new motion to correct the original invalid sentence. See MCR 6.429(B)(2); MCR 7.211(C)(1). While plaintiff's request is reasonable in light of the unique circumstances of this case—not the least of which is the recent amendments to MCR 6.429—we decline to issue a remand.

Again, we must note that, because defendant was convicted of four counts of CSC I, the trial court was required to include a lifetime-monitoring provision in defendant's *original* sentence. Because the trial court did not include this provision in the original sentence, its original sentence was invalid. Therefore, on remand, the only recourse would be for the trial court to issue the same, amended judgment that was invalid under the prior version of MCR 6.429, but would be valid when reissued. Recognizing the waste of judicial resources that would result from remanding this case for the trial court to reissue a judgment it has already issued, we decline to order a remand. Instead, we affirm the amended judgment of sentence, not under the trial court's authority to amend the judgment, but under our authority to correct the trial court's original invalid sentence and to "enter any judgment or order or grant further or different relief as the case may require." MCR 7.216(A)(7).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood