*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS HENRY HEARN,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2022

No. 355963
Wayne Circuit Court
LC No. 19-001501-01-FC

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a bench trial, of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 15 to 30 years' imprisonment for the assault conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for resentencing.

Defendant was convicted of assaulting Maurice Rice outside his Detroit home on the evening of October 31, 2018. Rice was the long-term boyfriend of defendant's mother, Geneva Giles. Rice, Giles, and defendant had all lived together in the home for several years. The prosecution's theory at trial was that defendant assaulted Rice because defendant was upset that Rice would not drive him to the store. There was evidence that Rice and his friend "Flex" were sitting inside Giles's car that was parked in the driveway at the family home. At some point, defendant came outside, approached Rice, repeatedly asked Rice to drive him to the store, and became upset when Rice refused to do so. During this period, Rice's uncle, Raymond Nero, pulled into the driveway and parked in front of Giles's car. Eventually, defendant and Rice started arguing, their argument escalated, and then Giles came out of the house and stood between the two men. Defendant "reached over" Giles and slapped Rice in his face. Rice moved Giles out of the way, planning to retaliate by hitting defendant, who in turn pulled a gun out of his pocket and shot Rice eight times in various parts of his body. Nero quickly left the scene and called 911. Nero and Rice both identified defendant as the shooter before and at trial. After the shooting, defendant left the scene, never returned to his home, and was apprehended three months later at a different location.

The defense theory at trial was that defendant was misidentified as the shooter and that Rice's and Nero's identifications were not credible. At trial, Giles testified for the defense that there was an unidentified group of men outside her home at the time of the shooting and she did not see the shooter.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence to establish his identity as the shooter, or to prove the requisite intent to sustain his conviction of assault with intent to commit murder. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the [trier of fact's] verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A. IDENTIFICATION

Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).[1] Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); see also *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Davis*, 241 Mich App at 700.

Two eyewitnesses, Rice and Nero, unequivocally identified defendant as the shooter. The evidence disclosed that Rice was familiar with defendant, having known him for five years and lived in the same house with him and his mother for approximately four years. Rice, who had been standing "face to face" with defendant and close enough for defendant to "reach over his mother" to slap Rice, saw defendant pull a gun out of his pocket and shoot it. Rice was four feet from defendant when defendant first fired the gun. Nero testified that he saw defendant slap Rice in "the head area," and saw defendant shoot Rice. Nero fled, called 911, and identified defendant as the shooter. Rice and Nero both consistently identified defendant as the shooter before and at trial. Their testimony, if believed, was sufficient to establish defendant's identity as the perpetrator beyond a reasonable doubt. *Id*. Moreover, in addition to Rice's and Nero's positive and unequivocal identification testimony, the prosecution presented evidence that at the time of the

---

[1] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

shooting, Rice and defendant were engaged in an altercation, during which defendant slapped Rice immediately before the shooting started, and that defendant fled the scene and never returned to his residence after the shooting. The evidence supports the reliability of the eyewitnesses' identifications. Viewed in a light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity as the shooter.

Defendant essentially argues that Rice's and Nero's identification testimony was not reliable, emphasizing inconsistences in the eyewitnesses' testimony, poor lighting, Rice's intoxication, and defendant's mother's testimony that there was an unidentified group of men in the area. Defendant's challenges are related to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). The same challenges to the identification testimony that defendant now raises on appeal were presented to the trial court during trial. This Court "will not interfere with the [trier of fact's] determinations regarding weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Even if a witness's identification of the defendant is less than positive, the question remains one for the trier of fact. *People v Abernathy*, 39 Mich App 5, 7; 197 NW2d 106 (1972). Applying these standards, there was sufficient evidence to enable the trial court to find beyond a reasonable doubt that defendant was the shooter, and we will not disturb that determination.

## B. ASSAULT WITH INTENT TO COMMIT MURDER

Defendant also argues that the prosecution failed to prove beyond a reasonable doubt that he possessed the requisite intent to be convicted of assault with intent to commit murder. Assault with intent to commit murder requires proof that the defendant committed "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citation omitted). A trier of fact may infer an intent to kill from the manner and use of a dangerous weapon and a motive to kill. *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997); *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

Viewed in a light most favorable to the prosecution, there was sufficient evidence that defendant acted with an intent to kill. The evidence showed that defendant and Rice were engaged in a dispute regarding Rice's refusal to drive defendant to the store, the dispute escalated, and defendant slapped Rice before pulling a handgun from his pocket, shooting Rice six times before Rice fell to the ground, and shooting Rice two more times after Rice was on the ground. Defendant initially shot Rice in his stomach, back, arm, and leg, and then shot Rice twice in his back as Rice was lying face down on the ground. Considering the evidence that defendant pulled out a gun during an argument with Rice and shot Rice a total of eight times, which included gunshots to

Rice's stomach and back, a trier of fact could have rationally inferred that defendant acted with an intent to kill.[2]

## II. PROSECUTOR'S CONDUCT

Next, defendant argues that the prosecutor engaged in misconduct by impermissibly intimidating and coercing Nero into incriminating defendant. Again, we disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). As defendant acknowledges, he did not object to the challenged conduct at trial. Therefore, we review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

### A. THE PROSECUTOR'S CONDUCT

At the outset of the prosecutor's direct examination of Nero, Nero gave an account of what he observed that did not include seeing defendant with a gun or shooting Rice. Nero testified that he saw defendant slap Rice and, as Rice attempted to retaliate, heard gunshots coming from where Rice and defendant were standing, looked up, saw Rice on the ground and defendant standing there, and he did not see if defendant had anything in his hand because he was backing out to leave. Nero further testified that he talked to the police at the hospital after the incident, and gave a statement. Subsequently, the following exchange occurred:

> Q. Mr. Nero, do you recall the statement that you made to the detective at the hospital?
>
> A. Yes. I recall making a statement.
>
> Q. Did you ever indicate to the police, um, that [defendant] reached over [Giles] and slapped [Rice] in the face. [Rice] goes after [defendant] and he pulls the gun from his right side and fires two shots and [Rice] goes down. And [defendant] fires four more shots at [Rice] while he's on the ground. I pulled out of the driveway and drove away. Do you recall saying that?
>
> A. Yes.
>
> Q. At the time you said that, did you believe it to be the truth? And is it the truth?
>
> A. Yes.

---

[2] Contrary to what defendant argues, the mere fact that defendant helped put Rice in the car to be transported to the hospital after the shooting does not erase the strong evidence that supports that defendant acted with an intent to kill when he shot Rice multiple times.

-4-

Q. So you did see [defendant] with a gun that evening?

A. I didn't see it until I seen the sparks when I was leaving.

Q. But you did see [defendant] shoot [Rice], correct?

A. Yes.

Q. Initially you indicated you heard two shots, right?

A. Yes.

Q. And then you indicated in your statement that you heard four more shots and you, in fact, saw them, right?

A. No. I heard the shots when I was driving down the street. I left the scene.

Q. Okay.

A. I heard the extra shots.

\* \* \*

Q. Was it true at the time? And is it true today?

A. Yes.

## B. ANALYSIS

"Both our Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses." *People v Stacy*, 193 Mich App 19, 25; 484 NW2d 675 (1992). "Although the issue of prosecution intimidation usually arises in the context of alleged intimidation of defense witnesses, this Court has condemned as well intimidation by the prosecution of its own witnesses." *People v Clark*, 172 Mich App 407, 409; 432 NW2d 726 (1988). A new trial is appropriate if the intimidation resulted in a defendant being denied a fair and impartial trial. *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003).

Preliminarily, there is no indication whatsoever in the cited portion of the prosecutor's examination that the prosecutor intimidated, coerced, or threatened Nero into implicating defendant. The cases on which defendant relies are factually distinguishable and do not support defendant's argument that the prosecutor's conduct in this case can be characterized as prosecutorial intimidation of a witness.

Furthermore, the prosecutor was permitted to impeach Nero with his prior statement, and there is no basis for concluding that the prosecutor did so improperly. The prosecutor specifically asked that she be allowed to refer to Nero's prior police statement for impeachment purposes, which the trial court allowed. "A prosecutor may impeach a witness in court, but may not

intimidate the witness, in or out of court." *Clark*, 172 Mich App at 409. Defendant did not challenge the propriety of the trial court's ruling in the trial court and he does not do so on appeal. "The credibility of a witness may be attacked by any party, including the party calling the witness." MRE 607. MRE 613(b) provides that extrinsic evidence of a witness's prior inconsistent statement is admissible if the witness is allowed to explain or deny the statement and an adverse party is given an opportunity to examine the witness. To satisfy MRE 613(b), "the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness." *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007). The prosecution may impeach its own witnesses, even when the prior inconsistent statement tends to directly inculpate the defendant. *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997).

The prosecutor established a proper foundation, and because Nero testified inconsistently with his statement to the police, the prosecutor was permitted to impeach him with his prior statement. While being examined by the prosecutor, Nero gave an account of what he observed that did not include that he saw defendant with a gun or shoot Rice. He testified, in pertinent part, that after hearing gunshots, he looked up, saw defendant, but did not see if defendant had anything in his hand because Nero was backing out to leave. By denying that he had seen anything in defendant's hand, and thus did not see defendant shoot Nero, Nero testified inconsistently with his prior statement. The prosecutor asked Nero if he had told the police about several details, including seeing defendant shoot Rice. Nero indicated that his statement was the truth, and agreed that he previously stated that he saw defendant with a gun, explaining that he had "seen the sparks [from the gun] when [he] was leaving." Nero was afforded the opportunity to explain the inconsistency, and defendant had the opportunity to cross-examine him regarding his prior statement. Thus, defendant is not entitled to a new trial on the basis of prosecutorial misconduct because there is no evidence that the prosecutor intimidated or coerced Nero into implicating defendant, and because the prosecutor was permitted to use Nero's prior statement for impeachment purposes.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective by failing to object to the prosecutor's questioning of Nero.

Because defendant failed to raise this ineffective-assistance claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

For the reasons previously discussed, the prosecutor's questioning of Nero was not improper. Because the prosecutor did not intimidate, coerce, or threaten Nero, and permissibly used Nero's prior statement for impeachment purposes, defense counsel's failure to object was not objectively unreasonable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Consequently, defendant cannot establish a claim of ineffective assistance of counsel on this basis.

### III. NEWLY DISCOVERED EVIDENCE

Defendant argues that he is entitled to a new trial on the basis of newly discovered evidence in the form of a letter written by Rice that attempts to recant his identification of defendant as the shooter.

The trial court denied defendant's motion for a new trial on the basis of this evidence. We review the trial court's decision for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003).

### A. RICE'S LETTER

In support of this claim, defendant relies on a letter from Rice that was submitted after defendant's trial and before sentencing. Rice stated, in pertinent part:

> I am sharing this information because I strongly feel Marcus Hearn should be returned home to his family.
>
> Yes I did testify several times as afraid due to being told that I would go to jail if I didn't. Yes, I was drinking and smoking weed that day and can confirm that Marcus and I was arguing. I can't honestly recall who shot me because there were several people out there that night and it was dark. Marcus did help put me in the car to get help. I can not [sic] confirm if Geneva went back to the home but the residence was locked and Marcus didn't have a key. I was told at a later time that the landlord wanted Mrs. Giles moved due to the property getting vandalized. Geneva did inform me that the window was broken, police entered the property, items were stolen from the home and house was shot at. Yes prior to discharge and after from the hospital I declined to receive help or treatment recommendations. I do not currently have any bullets in my body and did not get my colostomy reversed as should have been done a year and half ago.
>
> Furthermore, I humbly ask the court to release Marcus Hearn so we all may continue to rebuild our lives.

### B. ANALYSIS

To obtain a new trial on the basis of newly discovered evidence, a defendant must demonstrate that: (1) the evidence itself, not merely its materiality, is newly discovered; (2) the newly discovered evidence is not merely cumulative; (3) the defendant, exercising reasonable diligence, could not have discovered and produced the evidence at trial; and, (4) the new evidence makes a different result probable on retrial. *Id*. at 692. The trial court's function in evaluating the

credibility of new evidence is "limited" because the trial court may not be "the ultimate fact-finder . . . ." *People v Johnson*, 502 Mich 541, 567; 918 NW2d 676 (2018). Rather, because the remedy would be a grant of a new trial, the trial court's function is to decide whether a reasonable juror "could find the testimony credible on retrial." *Id.*

Defendant contends that Rice's letter warranted a new trial because Rice recanted his testimony identifying defendant as the shooter. However, "[a]s a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial." *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016) (quotation marks and citation omitted). The trial court found that Rice's letter, provided approximately 19 months after the shooting, would not make a different result probable on retrial. First, Rice's identification testimony did not stand alone. In denying defendant's motion for a new trial, the trial court observed that both Rice and Nero had unequivocally identified defendant as the shooter, and "[i]f this case were tried without the testimony of Rice a guilty verdict could have been reached based on Nero's testimony alone if he was believed." The trial court, which served as the trier of fact at defendant's trial, indicated that it had believed Nero's testimony "far beyond a reasonable doubt." Second, the trial court also observed that in addition to the identification testimony, there was strong circumstantial evidence to support defendant's identity as the shooter. Notably, after the shooting, defendant left the crime scene, which was his home, and he did not call 911, talk to the police, or go to the hospital to check on Rice, his mother's long-term boyfriend. He never returned home in the three months before his capture. We agree with the trial court that a reasonable trier of fact would not find that these were "actions of an innocent man and . . . the actions one would expect from an eyewitness to a random shooting." In addition, there was undisputed evidence that, immediately before the shooting, defendant and Rice were engaged in a verbal altercation during which defendant slapped Rice. Lastly, although defendant's mother, who testified as a defense witness, testified that there was an unidentified group of men in the area at the time of the shooting, there was no information provided connecting anyone in this unidentified group to the shooting. For these reasons, defendant has not demonstrated that the "new evidence" would make a different result probable on retrial. *Cress*, 468 Mich at 692. Consequently, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this basis.

## IV. SCORING OF OFFENSE VARIABLES

Defendant next argues that he is entitled to resentencing because two of his sentencing guidelines offense variables were erroneously scored. Defendant challenges the scoring of offense variable (OV) 4 (psychological injury to the victim), and OV 19 (interference with the administration of justice). We agree that defendant is entitled to resentencing because the trial court erred in assessing 10 points for OV 4.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

## A. OV 4

OV 4 addresses psychological injury to a victim, MCL 777.34(1), and the trial court is required to score 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a). The victim did not appear at sentencing, and the prosecution conceded that it did not have any information "confirming [or] indicating that the victim was requiring professional treatment." In assigning a 10-point score for OV 4, the trial court principally relied on the constellation of the victim's physical injuries to conclude that the victim would have also suffered psychological harm. The court also found that known evidence of the victim's circumstances—notably that he did not return to the house where he was shot and had been living with defendant's mother—supported a finding of psychological trauma. We conclude that the facts on which the trial court relied did not support a 10-point score for OV 4.

Although the trial court observed that the fact that a victim has not sought professional treatment for a psychological injury is not conclusive, MCL 777.34(2), there must still be "some evidence of psychological injury on the record to justify a 10-point score," *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). The facts on which the trial court relied—that the victim had a colostomy bag during trial, had a bullet in his leg, had been on a ventilator, and had two surgeries—consider the victim's *physical* injuries. The victim's physical injuries were separately considered by OV 3, which considers physical injury to a victim, MCL 777.33(1). For purposes of OV 3, a " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Defendant was assessed 25 points for OV 3, which is required when a "[l]ife threatening or permanent incapacitating injury occurred to a victim[.]" MCL 777.33(1)(c); *People v Houston*, 473 Mich 399, 407; 702 NW2d 530 (2005). Although there was overwhelming evidence that the victim suffered a "[l]ife threatening or permanent incapacitating injury," for which the trial court properly assessed 25 points under OV 3, there is no evidence on the record that the victim suffered a serious psychological injury requiring professional treatment. MCL 777.34(1)(a). The trial court also referred to the victim's circumstances to suggest that they reasonably would be likely to cause psychological harm. However, a trial court may not assume a psychological injury occurred simply because a person in the victim's circumstances would have suffered a serious psychological injury. *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017). In sum, the trial court erred by relying on evidence of the victim's physical injuries and expectation that his circumstances would reasonably cause psychological harm to score OV 4.

## B. OV 19

Ten points are appropriate under OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). Interfering or attempting to interfere with the administration of justice is broadly interpreted when assessing OV 19. *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). Any acts by a defendant that interfere or attempt to interfere with the judicial process or law enforcement officers and their investigation of a crime may support a score for OV 19. *Id*. at 287-288. In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). "Hiding from the police constitute[s] an interference with the administration of justice because it [is] done for the purpose of hindering or

hampering the police investigation." *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016).

The facts of the case provided a reasonable basis for the trial court to conclude that defendant interfered in the administration of justice when he went into hiding and attempted to evade the police immediately before his arrest. Evidence was presented at trial that defendant left the crime scene—his home—after the shooting, and did not return. Officers went to defendant's home after the offense and three additional times in November 2018, looking for defendant, and defendant was not there. Defendant's whereabouts remained unknown for three months, and were revealed only after his photograph was broadcasted on the news and the police received a tip regarding his location. The apprehending officer testified that as he approached defendant's reported location, defendant, who had just walked out of a house, made eye contact with the officer, turned, quickly walked away, and tried to get back into the house that he had left. The police unit caught defendant before he could escape, after which he complied with orders to get on the ground and was handcuffed. As this Court observed in *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016), "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." The trial court did not clearly err when it assigned 10 points for OV 19.

## C. RESENTENCING

The trial court's error in scoring OV 4 requires resentencing because the scoring error affects defendant's appropriate sentencing guidelines range. The trial court scored the guidelines for defendant's conviction of assault with intent to commit murder, which is a class A offense, MCL 777.16d, governed by the sentencing grid at MCL 777.62. Defendant received a total offense variable score of 100 points, placing him in OV Level VI (100+ points), and a prior record variable (PRV) score of 30 points, placing him in PRV Level D (25-49 points). These scores resulted in a sentencing guidelines range of 171 to 285 months, MCL 777.62, and the trial court sentenced defendant within this range to a minimum term of 180 months. The additional 10 points for OV 4 increased defendant's total OV score from 90 points to 100 points, which placed him in OV Level VI instead of OV Level V (80-99 points), resulting in a higher guidelines range. The guidelines range for the D-V cell is 135 to 225 months. MCL 777.62. Because the scoring error affects the guidelines range under which defendant was sentenced, resentencing is required. See *People v Francisco*, 474 Mich 82, 88-90, 92; 711 NW2d 44 (2006).

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed under Supreme Court Administrative Order No. 2004-6, Standard 4—none of which have merit.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to obtain and present additional evidence, and failing to call an expert witness. Because defendant failed to raise these ineffective-assistance claims in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record. *Heft*, 299 Mich App at 80.

Defendant faults defense counsel for failing to obtain defendant's cell phone records and footage from a store's surveillance camera to show that he had already been to the store earlier that day. Defendant argues that this evidence would have disproved the prosecution's theory that Rice was shot during an argument regarding Rice's refusal to drive defendant to the store. Decisions regarding what evidence to present are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and counsel has wide discretion in matters of strategy, *Heft*, 299 Mich App at 83. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). But "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation and quotation marks omitted). "[T]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted). That simply is not the case here.

Although motive is not an element of assault with intent to commit murder, it is relevant to proving intent to kill, which is a necessary element of the assault with intent to commit murder. See *People v Herndon*, 246 Mich App 371, 412-413; 633 NW2d 376 (2001). At trial, defense counsel called defendant's mother, Giles, an eyewitness to the offense, who testified that defendant and Rice had gone to the store earlier that day. Thus, to the extent that this information was relevant, the trial court was aware of the defense's claim that defendant had already been to the store. Although defendant now asserts that defense counsel should have obtained his cell phone records or footage from the store's surveillance camera, which could have further established that he had already been to the store, to the extent that this information was relevant, it was objectively reasonable for counsel to rely on Giles's testimony to establish that defendant had already been to the store. In any event, defendant overstates the relevancy of this evidence. It was undisputed that defendant and Rice were involved in a heated argument just before the shooting. Evidence that defendant had already been to the store earlier that day may have undermined the prosecution's theory that Rice's refusal to drive defendant to the store was the impetus for that argument, but it was the evidence of the argument itself, not the reason for the argument, that was most significant. Even Giles, the lone defense witness, testified that Rice and defendant were "arguing back and forth" just before the shooting. Further, defendant has not provided any witness affidavits, cell phone records, video footage, or other offer of proof establishing the existence of the additional evidence he believes counsel should have provided, or demonstrating that such evidence would have been favorable to the defense. Absent such a showing, defendant cannot show that there is a reasonable probability that, but for counsel's failure to obtain additional evidence that defendant had already been to the store at some time before the shooting, the result of the trial would have been different. *Nix*, 301 Mich App at 207.

Defendant also argues that defense counsel failed to adequately challenge the identification testimony, and should have called a defense eyewitness expert. Decisions regarding how to impeach witnesses and what questions to ask are also matters of trial strategy. *Rockey*, 237 Mich App at 76. Likewise, "[a]n attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190. A claim of ineffective assistance of counsel premised on the failure to call a witness is analyzed under the same standard

as all other ineffective-assistance-of-counsel claims. *People v Jurewicz*, 506 Mich 914, 914; 948 NW2d 448 (2020).

At trial, defense counsel's strategy was to demonstrate that Rice and Nero misidentified defendant as the shooter. Counsel cross-examined Rice and Nero to highlight the differences in their accounts as compared to each other and their prior statements, and emphasized the existence of conditions that would have affected the ability of these eyewitnesses to accurately identify the shooter, including the lack of lighting, drug and alcohol use, and being distracted by and focused on other things—for Nero, specifically, his female companion in his car. The decision to rely on cross-examination to challenge a witness's identification has been found to be objectively reasonable. *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). That a particular trial strategy failed does not mean counsel's performance was deficient. *Id.* Furthermore, defense counsel could have chosen not to call an expert for various reasons, including that the expert's testimony would have been unsupportive or even harmful to the defense, especially where it was shown that Rice and Nero were both familiar with defendant and had known him for many years. Moreover, defendant has failed to establish the factual predicate for his claim. *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). Defendant has not made an offer of proof regarding the substance of any testimony a defense expert could have offered. Defendant's mere speculation that an expert could have provided unspecified favorable testimony is insufficient to show that defense counsel's failure to call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. Accordingly, defendant has not demonstrated that defense counsel was ineffective for failing to call a defense expert. *Nix*, 301 Mich App at 207.

## B. SCORING OF PRV 2

Defendant argues that the trial court erred by assigning a 20-point score to PRV 2 of the sentencing guidelines. To preserve a challenge to the scoring of the guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because defendant did not so challenge the scoring of PRV 2, this claim is unpreserved. Unpreserved scoring challenges are reviewed for plain error affecting defendant's substantial rights. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

Defendant received a score of 20 points for PRV 2, which considers low-severity felony convictions. MCL 777.52. A score of 20 points is appropriate if "[t]he offender has 3 prior low severity felony convictions[.]" MCL 777.52(1)(b). As defendant acknowledges, he was assigned to youthful trainee status under the Holmes Youthful Trainee Act ("HYTA"), MCL 762.11 *et seq.*, after entering a guilty plea for the felony offenses of two counts of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(*v*), and felony-firearm. Defendant does not dispute that these offenses otherwise qualify as low-severity felonies, but he argues that the convictions underlying his youthful trainee status cannot be used to score PRV 2 because he successfully completed his three-year probation under HYTA, the case was closed on July 28, 2017, and he had no other felony convictions.

Under HYTA,

> if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-fourth birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee. . . . [MCL 762.11(1).]

An assignment to youthful trainee status does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee. MCL 762.12; *People v Dipiazza*, 286 Mich App 137, 141; 778 NW2d 264 (2009). MCL 777.50(4)(a)(*i*) provides, however, that when scoring PRVs 1 through 5, " '[c]onviction' includes . . . [a]ssignment to youthful trainee status under [MCL 762.11 through 762.15]." Thus, defendant's assignment to youthful trainee status under HYTA did not prevent the trial court from considering the underlying felony convictions when scoring PRV 2. Because defendant's convictions of two counts of possession of less than 25 grams of a controlled substance and felony-firearm are qualifying convictions for purposes of scoring PRV 2, the trial court's 20-point was warranted.

Defendant also argues that defense counsel was ineffective by failing to object to the scoring of PRV 2. Because defendant failed to raise this claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record. *Heft*, 299 Mich App at 80.

For the reasons discussed earlier, the trial court correctly assessed 20 points for PRV 2 because defendant had three qualifying low-severity felony convictions. MCL 777.52(1)(b). Thus, it was objectively reasonable and within the range of reasonable professional conduct to not advance an objection. As stated previously, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Therefore, defendant has not established a claim of ineffective assistance of counsel on the basis of defense counsel's failure to object to the trial court's scoring of PRV 2.

Defendant's convictions and his sentence for felony-firearm are affirmed. We vacate defendant's sentence for assault with intent to commit murder, and remand for resentencing on that conviction only. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan